IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

BROOKE MCINTIRE,                                    CIVIL DIVISION

        Plaintiff,                                No.  1:17-cv-79

v.

OS RESTAURANT SERVICES, LLC d/b/a
OUTBACK STEAKHOUSE,

        Defendant.                                **JURY TRIAL DEMANDED**

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff Brooke McIntire, by and through counsel Robert A. Bracken, Esquire and the law firm of Archinaco/Bracken LLC, and files the following Complaint in Civil Action and avers as follows:

### Plaintiff

1. Plaintiff, Brooke McIntire is an adult individual with an address of 3740 Emmet Drive, Erie, PA 16511.

2. Plaintiff was employed as a server at the Outback Steakhouse located at 2706 Interchange Road, Erie, PA 16565.

### Defendants

3. OS Restaurant Services LLC, is a limited liability company with a registered address of 2202 North West Shore Blvd., Suite 500, Tampa, FL 33607. OS Restaurant Services, LLC owned and operated the Outback Steakhouse location at which Ms. McIntire worked.

4. Further, Ms. McIntire's paychecks came from OS Restaurant Services, LLC.

5. OS Restaurant Services, LLC was also the employer of Bryan Chaffee, the Managing Partner, of the Erie Outback Steakhouse at which Ms. McIntire worked.

1

## Jurisdiction

6. On or about August 4, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The filing also constituted an initiation of proceedings with the Pennsylvania Human Relations Commission pursuant to and by operation of the work sharing agreement between the EEOC and that agency.

7. Plaintiff was issued Notices of Right to Sue from the EEOC. See Exhibits 1 and 2.

8. It has been more than one hundred and eighty (180) days since the filing of Plaintiff's Charge of Discrimination.

9. Plaintiff has complied with all conditions precedent to filing this Complaint.

10. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617, as well as 28 U.S.C. § 1367 for Plaintiff's pendent claims.

11. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in Erie County, Pennsylvania.

12. Indeed, Plaintiff's termination occurred within the Commonwealth of Pennsylvania and, more specifically, this District.

## Facts

13. Ms. McIntire was hired as a server on June 25, 2009 at the Erie Outback Steakhouse.

14. She worked there full-time for approximately six years.

15. Then, after she gave birth to her child, she worked there part-time, as she also held another job.

16. Ms. McIntire worked for Outback part-time for approximately one-year until she was terminated.

17. On June 21, 2016, Erie Outback Steakhouse's Managing Partner, Bryan Chaffee, terminated Ms. McIntire's employment following her objections to his sexual harassment.

18. Bryan Chaffee was hired after having been employed as a manager at Ponderosa and Longhorn Steakhouse.

19. Upon information and belief, Mr. Chaffee was terminated from both of those jobs as a result of engaging in improper sexual conduct with female subordinate employees.

20. As such, Outback should have never hired Mr. Chaffee where he had essentially unfettered discretion in the manner in which he hired and interacted with female subordinates.

21. Or, Outback should have ensured that Mr. Chaffee was adequately supervised, which he was not.

22. In fact, District Manager, Mark Smith, was alerted to claims that Mr. Chaffee was having sexual relationships with female subordinate(s), yet did nothing.

23. Mr. Chaffee had sexual relations with several Outback subordinates.

24. Upon information and belief, those included consensual and non-consensual sexual relations and/or sex-related conduct between Mr. Chaffee and female subordinates.

25. Mr. Chaffee's sexual escapades with Outback employees caused there to be a hostile work environment at the Erie Outback location.

26. In or about August 2015, Ms. McIntire's best friend at the time, Outback employee Tara Sitter, invited Ms. McIntire to Mr. Chaffee's home.

27. Ms. McIntire learned at that time that Ms. Sitter and Mr. Chaffee were in a relationship for years.

28. Thereafter, Ms. McIntire would visit Mr. Chaffee's home to spend time with Ms. Sitter.

29. Additionally, Mr. Chaffee encouraged and frequently held parties at his home, which were attended by other Outback employees.

30. On or about March 1, 2016, Mr. Chaffee called Ms. McIntire into his office at Outback.

31. Mr. Chaffee told Ms. McIntire that Ms. Sitter stopped talking to him for two days because Mr. Chaffee told Ms. Sitter that Mr. Chaffee would love to "t*tty f*ck" Ms. McIntire.

32. In response, Ms. McIntire was shocked and told Mr. Chaffee that he should never say that again.

33. After that incident, Ms. McIntire had spoken to Mr. Chaffee about his relationship with Ms. McIntire's best friend, Ms. Sitter, on a few occasions.

34. Ms. McIntire was hoping to persuade Mr. Chaffee to leave Ms. Sitter alone as he was approximately twice her age or, at the very least, let Ms. Sitter's family know about the relationship.

35. So, several days later, Ms. McIntire made plans to speak with Mr. Chaffee at his home about Ms. Sitter.

36. On March 10, 2016, Ms. McIntire visited Mr. Chaffee's home to discuss his relationship with Ms. Sitter.

37. The relationship was only talked about briefly, as Mr. Chaffee's pregnant sister was present most of the time and indicated that she was hungry.

38. So, Mr. Chaffee and Ms. McIntire went into his truck for the purpose of going to Arby's to pick up some food.

39. Once in the truck, Mr. Chaffee stated the following: "My friends are the most important thing to me. The number one thing I value the most in my life is what my friends

think of me. My friends talk about you. They have always asked me if I ever had the opportunity to do anything with you. So my friends would be really upset with me if I didn't ask you if I could f*ck those t*ts."

40. Ms. McIntire initially busted out laughing at him, as his statement was preposterous.

41. Then, Ms. McIntire told him that that the answer was no and that she'd never let him cheat on her best friend.

42. Ms. McIntire and Mr. Chaffee then continued to Arby's and picked up food.

43. Upon returning to Mr. Chaffee's residence and before exiting the vehicle, Mr. Chaffee asked whether Ms. McIntire would let him "f*ck those t*ts."

44. Ms. McIntire ignored him and went into Ms. Chaffee's residence, as Mr. Chaffee's sister was there.

45. Ms. McIntire then ate her food and stated that she needed to leave.

46. Mr. Chaffee followed Ms. McIntire stating that he needed to move his truck into the garage.

47. As Ms. McIntire went up the stairs to leave, Mr. Chaffee blocked her from passing.

48. Mr. Chaffee then fondled Ms. McIntire by rubbing his fingers over her breasts and asking, "Are you sure I can't use these for two minutes?"

49. Ms. McIntire pushed his hand away and ran to her car.

50. The next day, Ms. McIntire confronted Mr. Chaffee about his conduct in text messages.

51. Mr. Chaffee attempted to deny his conduct and blame Ms. McIntire - the victim.

52. He also attempted to rally others into blaming Ms. McIntire, including her former best friend, Ms. Sitter.

53. As a result, thereafter, Ms. McIntire was not able to work a full shift at Outback, as the work environment was too hostile and uncomfortable.

54. In particular, Ms. McIntire refused to work when Mr. Chaffee would be present.

55. Mr. Chaffee even acknowledged via text message that Ms. McIntire did not have to work on a particular date since he would be present.

56. On or about June 20, 2016 or June 21, 2016, Mr. Chaffee terminated Ms. McIntire's employment.

57. Mr. Chaffee terminated Ms. McIntire because he was concerned that she would report his conduct.

58. Days later, upon learning that Mr. Chaffee terminated her employment, Ms. McIntire reported his conduct to Outback's employee relations department.

59. Soon thereafter, Mr. Chaffee's employment with Defendant ended.

## COUNT I
### Sexual Harassment / Sex Discrimination

60. Plaintiff incorporates by reference herein Paragraphs 1 through 59 of the Complaint as if more fully set forth at length herein.

61. Defendant's conduct described above and herein constitutes sexual harassment / discrimination and is a violation of Title VII.

62. Defendant's discriminatory conduct was used as a basis for employment decisions affecting Plaintiff.

63. The conduct described had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive work environment.

64. The conduct described above and herein was unlawful sexual discrimination committed by Defendant's employees, servants and/or agents who had the effective ability to influence employment actions that could affect Plaintiff, including but not limited to firing.

65. As a direct and proximate result of Defendant's unlawful, willful, deliberate harassment and discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss of wages and loss of benefits, harm to her reputation, adverse effects on her career and diminished earning capacity.

66. As a direct and proximate result of Defendant's unlawful, willful and deliberate discrimination and harassment against Plaintiff, Plaintiff suffered from physical problems including but not limited to emotional distress and anxiety.

67. By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

68. As a result of Defendant's discriminatory conduct, Plaintiff is entitled to all available damages pursuant to Title VII, including but not limited to damages for the following: (1) all available compensatory damages; (2) economic and non-economic losses; (3) equitable relief including employment, reinstatement and promotion; (4) attorneys' fees and costs; and (5) punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment be rendered in her favor and against Defendant in an amount in excess of $75,000 with attorneys' fees and costs assessed, and any other relief or damages deemed proper by the Court.

## COUNT II
### Hostile Work Environment

69. Plaintiff incorporates by reference herein Paragraphs 1 through 68 of the Complaint as if more fully set forth at length herein.

70. Defendant's conduct described above and herein constitutes discrimination and harassment.

71. The conduct described above and herein was unwelcome and unwanted.

72. The conduct described had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive work environment.

73. The unwelcome and unlawful conduct was both subjectively abusive to Plaintiff and also objectively severe and pervasive enough to create a work environment that a reasonable person would find abusive.

74. Such conduct, as described above and herein, was frequent, severe, pervasive, physically threatening and humiliating, interfered with work performance, had an adverse effect of Plaintiff's psychological well-being and was conducted by a harasser who was superior in the organization.

75. As a direct and proximate result of Defendant's unlawful, willful, deliberate harassment and discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing

in their nature, including but not limited to loss of wages and loss of benefits, harm to her reputation, adverse effects on her career and diminished earning capacity.

76. As a direct and proximate result of Defendant's unlawful, willful and deliberate discrimination and harassment against Plaintiff, Plaintiff suffered from physical problems including emotional distress and anxiety.

77. By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

78. As a result of Defendant's discriminatory conduct, Plaintiff is entitled to all available damages pursuant to Title VII, including but not limited to damages for the following: (1) all available compensatory damages; (2) economic and non-economic losses; (3) equitable relief including employment, reinstatement and promotion; (4) attorneys' fees and costs; and (5) punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment be rendered in her favor and against Defendant in an amount in excess of $75,000 with attorneys' fees and costs assessed, and any other relief or damages deemed proper by the Court.

## COUNT III
### Unlawful Retaliation

79. Plaintiff incorporates by reference herein Paragraphs 1 through 78 of the Complaint as if more fully set forth at length herein.

80. Defendant's conduct described above and herein constitutes retaliation, in violation of the law, including Title VII.

81. Defendant's retaliation against Plaintiff was the result of her objecting to the outrageous, offensive conduct set forth throughout the complaint.

82. Specifically, Defendant retaliated against Plaintiff by engaging in the following acts:

    (a)    terminating Plaintiff;

    (b)    subjecting Plaintiff to continued abusive, harassing conduct;

    (c)    defaming and disparage Plaintiff with co-workers; and

    (d)    as otherwise set forth in the Complaint.

83. As a direct and proximate result of Defendant's unlawful, willful, deliberate retaliation against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss of wages and loss of benefits, harm to her reputation, adverse effects on her career and diminished earning capacity.

84. As a direct and proximate result of Defendant's unlawful, willful and deliberate retaliation against Plaintiff, Plaintiff suffered from physical problems including emotional distress and anxiety.

85. As a result of Defendant's retaliatory conduct, Plaintiff is entitled to all available damages, including but not limited to damages for the following: (1) all available compensatory damages; (2) economic and non-economic losses; (3) equitable relief including employment, reinstatement and promotion; (4) attorneys' fees and costs; and (5) punitive damages

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment be rendered in her favor and against Defendant in an amount in excess of $75,000 with attorneys' fees and costs assessed, and any other relief or damages deemed proper by the Court.

## PENNSYLVANIA HUMAN RELATIONS ACT

86. Plaintiff incorporates by reference herein Paragraphs 1 through 85 of the Complaint as if more fully set forth at length herein.

87. Plaintiff intends to assert an fourth cause of action.

88. Plaintiff will request leave to amend to bring a cause of action under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. against all defendants, to secure full restitution of all wages and benefits resulting from Defendant's violation of the provision of the Pennsylvania Human Relations Act and for such other and further relief as may be appropriate upon the exhaustion of administrative remedies to the extent that the PHRA claims are not resolved before the PHRC.

89. Jurisdiction of this action will be based on the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

90. Plaintiff's filings with the EEOC constituted an initiation of proceedings with the Pennsylvania Human Relations Commission pursuant to and by operation of the work sharing agreement between the EEOC and that agency.

91. Accordingly, Plaintiff will move to amend the complaint to affirmatively assert PHRA claims premised upon Defendant's harassment, discrimination and retaliation of Plaintiff upon the exhaustion of administrative remedies.

**JURY TRIAL DEMANDED**                                   ARCHINACO / BRACKEN LLC

By /s/ Robert A. Bracken
Robert A. Bracken
1100 Liberty Ave., Suite C-6
Pittsburgh, PA 15222
Tel. (412) 434-0555
Fax (888) 563-7549